UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| NIRCA ALFRED | CIVIL ACTION NO. 6:23-CV-00681 |
| VERSUS | JUDGE DONALD E. WALTER |
| ANDREW SAUL | MAGISTRATE JUDGE DAVID J. AYO |

**REPORT AND RECOMMENDATION**

Before the Court is an appeal by Claimant Nirca Alfred of the Commissioner's finding of non-disability. The Court has considered the administrative record, the parties' briefs, and the applicable law, and recommends that the Commissioner's decision be AFFIRMED.

**Administrative Proceedings**

Claimant fully exhausted her administrative remedies before filing this action. She filed an application for Disability Insurance Benefits and Supplemental Security Income on May 6, 2021, alleging disability beginning on March 12, 2018. (Rec. Doc. 8-1, pp. 226, 233).[1] Her applications were denied on June 17, 2021. (Rec. Doc. 8-1, pp. 127, 132). She filed requests for reconsideration on July 20, 2021 (Rec. Doc. 8-1, pp. 137, 138), which were denied on February 11, 2022 (Rec. Doc. 8-1, pp. 145, 156). She then requested a hearing which was held by telephone due to the "extraordinary circumstance presented by the Coronavirus Disease 2019 (COVID-19) pandemic" before Administrative Law Judge Robert Grant on November 22, 2022. (Rec. Doc. 8-1, pp.

---

[1] The ALJ's Decision states that Claimant applied for disability insurance benefits and Supplemental Security Income on April 26, 2021, however the applications state she applied on May 6, 2021.

72 *et seq*). The ALJ issued a decision on December 23, 2022, concluding that Claimant was not disabled within the meaning of the Social Security Act from the claimed disability onset date of March 12, 2018, through the date of the decision. (Rec. Doc. 8-1, pp. 15-23). Claimant requested that the Appeals Council review the ALJ's decision, but the Appeals Council found no basis for review. (Rec. Doc. 8-1, p. 5). Therefore, the ALJ's decision became the Commissioner's final decision for the purpose of judicial review. *Higginbotham v. Barnhart*, 405 F.3d 332, 336 (5th Cir. 2005). Claimant then initiated this action, seeking review of the Commissioner's decision.

## Summary of Pertinent Facts

Claimant was born on August 12, 1976. She was 41 years old on the alleged disability onset date and 45 years old at the time of the ALJ's decision. She has a tenth-grade education, and her work history includes employment as a certified nursing assistant ("CNA") and as a dishwasher. (Rec. Doc. 8-1, pp. 256, 261). She alleged that she has been disabled since March 12, 2018, due to left ankle reconstruction, right ankle degenerative disease, high blood pressure, anxiety, and depression. (Rec. Doc. 8-1, p. 260).

The record reveals the following pertinent history[2]:

I.  **Claimant's Medical Records**

   A. Heinen Medical – Eunice, Louisiana.
   - January 23, 2018 – Claimant sought treatment for ongoing ankle pain, which did not respond to Tramadol and anxiety which responded to Buspirone. Dr. Heinen reported a history of bilateral

---

[2] Claimant submitted additional medical history with her appeal dated between December 16, 2022, and January 23, 2023, related to her right knee. (Rec. Doc. 34-69). These records have not been included in this summary because they are not pertinent to her claims of disability due to left ankle reconstruction, right ankle degenerative disease, high blood pressure, anxiety, and depression.

- ankle pain, plantar spur, hypertension, COPD, anxiety, and an unsteady gait.  Dr. Heinen prescribed Tylenol 3 for ankle pain and refilled her prescription for Buspirone. (Rec. Doc. 8-1, pp. 369, 370).
- February 1, 2018 – Claimant sought treatment for ongoing ankle pain after seeing an orthopedist on January 25, 2022, who prescribed medication (which was not covered by her insurance) and physical therapy (which she claimed she wanted to start after receiving pain medication covered by insurance).  Dr. Heinen prescribed Flexeril and Toradol for ankle pain. (Rec. Doc. 8-1, pp. 367-868).
- February 7, 2018 – Claimant sought treatment for stomach virus. (Rec. Doc. 8-1, pp. 366, 367).
- March 12, 2018 – Claimant sought treatment and referral for ongoing ankle pain after seeing a podiatrist who recommended that she apply for disability due to her foot pain and frequent falls.  Dr. Heinen prescribed Flexeril, Toradol, and Tylenol 3 for ankle pain and buspirone for anxiety. (Rec. Doc. 8-1, pp. 364-366).
- March 20, 2018 – Claimant sought completion of forms for disability application following fall at a nursing home where she worked which resulted in her no longer working.  Entry states: "[F]orm filled out." Dr. Heinen prescribed refills for medications. (Rec. Doc. 8-1, pp. 363, 364).
- March 28, 2018 – Claimant sought treatment for back pain and depression related to the "fact that she cannot work" and sought a mental health referral.  Dr. Heinen prescribed Prozac and referred Claimant to Ville Platte Mental Health. (Rec. Doc. 8-1, pp. 361-863).
- April 11, 2018 – Claimant reported that she was tolerating Prozac well and that it was helping her depression at a follow-up appointment with Dr. Heinen. (Rec. Doc. 8-1, pp. 360, 361).
- April 12, 2018 – Claimant sought help in filling out disability form due to problems with her feet.  Dr. Heinen stated: "[f]orm filled out after long visit with patient according to visits here due to this problem…. She is no longer able to work according to her podiatrist." (Rec. Doc. 8-1, pp. 358, 359).
- May 15, 2018 – Claimant sought treatment for sore throat and congestion and complained of ongoing bilateral ankle pain. (Rec. Doc. 8-1, pp. 356, 357).
- August 21, 2018 – Claimant sought treatment for bilateral ankle pain which she described as an 8 out of 10.  In addition to Prozac and Buspirone for depression and anxiety and Toradol, Tylenol 3, and Flexeril for her ankle pain, Dr. Heinen prescribed Gabapentin. (Rec. Doc. 8-1, pp. 354, 355).
- September 20, 2018 – Claimant reported that her bilateral ankle pain was a 7 out of 10.  Dr. Heinen prescribed medications.  (Rec. Doc. 8-1, pp. 353, 354).

- <u>April 25, 2019</u> – Claimant sought treatment for elevated blood pressure that she described as a 7 out of 10 and right foot pain which she described as an 8 out of 10. Dr. Heinen noted that she had failed to take her blood pressure medicine and prescribed Gabapentin for ongoing ankle/foot pain. (Rec. Doc. 8-1, pp. 352, 353).
- <u>May 8, 2019</u> – Claimant noted pain in right foot and sought treatment for a laceration on lower leg. Her wound was dressed and treated. (Rec. Doc. 8-1, pp. 351, 352).
- <u>May 15, 2019</u> – Claimant followed up regarding laceration and Dr. Heinen noted it was healing well and prescribed medication for her ongoing foot pain and anxiety. (Rec. Doc. 8-1, pp. 350, 351).
- <u>May 25, 2019</u> – Claimant followed up regarding laceration and Dr. Heinen noted it was healing but prescribed Rocephin. Claimant also noted that her ongoing ankle/foot pain was a 9 out of 10. (Rec. Doc. 8-1, pp. 348, 349).
- <u>July 31, 2019</u> – Claimant sought treatment for elevated blood pressure and cough. Dr. Heinen noted that she had failed to take her blood pressure medicine and prescribed medications. (Rec. Doc. 8-1, pp. 347, 348).
- <u>September 4, 2019, October 29, 2019, November 22, 2019, January 7, 2020</u> – Claimant sought treatment for cough and sinus issues and was prescribed medications for same as well as medications for ongoing issues. (Rec. Doc. 8-1, pp. 390-397).
- <u>February 7, 2020</u> – Claimant sought check-up and reported "feeling well without any specific complaints." Dr. Heinen prescribed medications for ongoing issues. (Rec. Doc. 8-1, p. 399).
- <u>April 20, 2020</u> – Claimant sought treatment via telemedicine for increased anxiety since discontinuing marijuana use. Dr. Heinen increased her dosage of Buspirone and prescribed medications for ongoing issues. (Rec. Doc. 8-1, p. 427-428).
- <u>June 23, 2020</u> – Claimant sought treatment for anxiety. Dr. Heinen prescribed medications for ongoing issues. (Rec. Doc. 8-1, p. 401-403).
- <u>July 30, 2020</u> – Claimant sought treatment for elevated blood pressure and stated that her right ankle was giving her trouble but that the pain was mild. Dr. Heinen noted that Claimant was "ambulating, eating, dressing, and toileting well and without assistance…. [and] does cardio workouts 3-4 days for about 30 minutes." Dr. Heinen prescribed medications for ongoing ankle pain, hypertension, and anxiety. (Rec. Doc. 8-1, pp. 403-404).
- <u>October 26, 2020</u> – Claimant sought treatment for hypertension, anxiety, and pain in both feet reporting pain at a level of 6 out of 10, swelling, weakness, and loss of balance. Dr. Heinen noted that Claimant was "ambulating, eating, dressing, and toileting well and without assistance" and prescribed medications for ongoing issues.

(Rec. Doc. 8-1, pp. 432-433).
- <u>November 24, 2020</u> – Claimant sought check-up and reported "feeling well without any specific complaints." Dr. Heinen prescribed medications for ongoing issues. (Rec. Doc. 8-1, pp. 434-435).
- <u>January 21, 2021</u> – Claimant sought check-up and treatment for pain in both feet/ankles which she reports as a 5 out of 10. She also exhibited high blood pressure but reported that her anxiety was well managed. Dr. Heinen noted prescribed medications for ongoing ankle pain, hypertension, and anxiety. (Rec. Doc. 8-1, pp. 403-404).
- <u>February 19, 2021</u> – Claimant sought check-up and reported increased anxiety, depression, and insomnia. Dr. Heinen noted that Claimant was "ambulating, eating, dressing, and toileting well and without assistance" and prescribed medications for ongoing issues. (Rec. Doc. 8-1, pp. 439-441).
- <u>June 1, 2021</u> – Claimant again sought treatment for a cold which she reported as mild, but she also reported exposure to COVID. Dr. Heinen noted that her anxiety and insomnia are managed. He ordered a COVID test and prescribed medications for ongoing issues. (Rec. Doc. 8-1, pp. 442-444).
- <u>July 30, 2021</u> – Claimant sought treatment via telemedicine for cold, lack of appetite, taste, body aches, fever, and low-grade temperature. Dr. Heinen noted that Claimant was "ambulating, eating, dressing, and toileting well and without assistance," ordered a COVID test, and prescribed medications for ongoing issues. (Rec. Doc. 8-1, pp. 521-523).
- <u>August 2, 2021</u> – Claimant sought treatment for worsening symptoms while awaiting COVID test. Dr. Heinen advised that she go to the emergency room. (Rec. Doc. 8-1, pp. 523-526).
- <u>August 3, 2021</u> – Claimant sought treatment via telemedicine after being diagnosed with COVID and pneumonia at the emergency room. She reported that she was feeling better. (Rec. Doc. 8-1, pp. 527-529).
- <u>August 11, 2021, August 17, 2021, August 19, 2021, September 1, 2021, September 7, 2021, September 20, 2021</u> – Claimant sought treatment via telemedicine after being diagnosed with COVID. She also sought a second COVID test and then a follow-up in-person appointment. Dr. Heinen monitored her progress and prescribed medications for COVID symptoms and on-going issues. (Rec. Doc. 8-1, pp. 530-550).

B. <u>Mercy Hospital, Ville Platte, Louisiana.</u>
- <u>March 5, 2018</u> – Claimant obtained x-rays of both feet and ankles due to osteoarthritis diagnosed by Dr. Oghale Eleyae. (Rec. Doc. 8-1, pp. 383-386).
- <u>February 27, 2020</u> – Claimant obtained CT scan of the right foot and

- x-rays of the left foot and ankle as requested by Dr. Oghale Eleyae. (Rec. Doc. 8-1, pp. 405-410).
- <u>August 2, 2021</u> – Claimant sought treatment at emergency room for symptoms related to COVID. (Rec. Doc. 8-1, pp. 553-556).

C. <u>Foot and Ankle Specialists, PLLC, Dr. Oghale Eleyae, Natchitoches, Louisiana.</u>
- <u>January 30, 2018</u> – Claimant sought treatment for bilateral foot and ankle pain and ankle weakness which lasted ten years. She reported sharp pain at a 6 out of 10, and that her right ankle/foot/leg was casted for over a year. Dr. Eleyae ordered x-rays and noted he would evaluate for disability after receiving the results of the x-rays. (Rec. Doc. 8-1, pp. 676, 677).
- <u>March 7, 2018</u> – Claimant sought follow-up treatment for bilateral foot/ankle pain. Dr. Oghale Eleyae reported that x-rays taken on March 15, 2018 revealed "severe arthritic changes with multiple spurs noted to both ankles. Evidence of poorly healed right ankle injury, stable hardware to left lateral ankle. No joint space noted to both subtalar joints. Severe flat feet." He further stated: "[b]ased on x-rays reviewed, [patient] will be in severe pain if she is subjected to standing and walking or any obligation that requires weight bearing. She is a good candidate for disability and will greatly benefit from disability services. I will continue with manage [sic] her symptoms and keep her as comfortable as possible within the constraints of my specialty." Dr. Eleyae prescribed Soma for cramps and spasms and Naproxen for Osteoarthritis. (Rec. Doc. 8-1, pp. 673-675).
- <u>May 25, 2018, June 27, 2018</u> – Claimant sought follow-up treatment for bilateral foot/ankle pain and ankle weakness. In addition to reiterating findings set forth in March 2018 and prescribing pain medications, Dr. Eleyae prescribed an ankle brace for Claimant's left ankle. (Rec. Doc. 8-1, pp. 667-672).
- <u>September 26, 2018, October 24, 2018, November 21, 2018, December 19, 2018, January 16, 2019, February 13, 2019</u> – Claimant sought follow-up treatment for bilateral foot/ankle pain and ankle weakness. In addition to reiterating findings set forth above, Dr. Eleyae prescribed pain medications and continued use of ankle brace. (Rec. Doc. 8-1, pp. 649-666).
- <u>March 20, 2019, October 30, 2019,</u> – In addition to findings and treatment described above, Dr. Eleyae discussed pain management with Claimant. (Rec. Doc. 8-1, pp. 643-648).
- <u>January 8, 2020, February 5, 2020</u> – In addition to findings and treatment described above, Dr. Eleyae discussed pain management with Claimant and gave her a steroid injection for plantar fasciitis in her left foot. (Rec. Doc. 8-1, pp. 637-642).

- <u>March 4, 2020, April 22, 2020</u> – In addition to findings and treatment described above, Dr. Eleyae discussed pain management with Claimant and gave her a steroid injection for plantar fasciitis in her right foot and ordered a CT scan of her right foot. (Rec. Doc. 8-1, pp. 630-635).
- <u>May 20, 2020, June 17, 2020, August 11, 2020, September 15, 2020, October 21, 2020, November 25, 2020, December 30, 2020, February 3, 2021, March 10, 2021, April 14, 2021, May 19, 2021, June 23, 2021, July 27, 2021, September 8, 2021, October 20, 2021, November 23, 2021, December 29, 2021, February 2, 2022, March 9, 2022</u> – In addition to findings and treatment described above, Dr. Eleyae discussed pain management with Claimant, gave her a steroid injection for plantar fasciitis in either her left or right foot, noted a pending order for a CT scan of the right foot, and treated an ingrown toenail. (Rec. Doc. 8-1, pp. 405-410, 463-465, 586-588, 591-593, 594-596, 598-600, 606-628).
- <u>Questionnaire Regarding Major Dysfunction of a Joint dated April 13, 2022</u> – Dr. Eleyae noted that Claimant had an abnormal joint with chronic joint pain/stiffness, abnormal motion, instability, and immobility, and the need for ankle braces which lasted since January 30, 2018. (Rec. Doc. 8-1, pp. 681-683).

## II.  **State Agency Consultants**

On January 16, 2021, at the initial level and on February 9, 2002, at the reconsideration level, the state agency medical consultants J. Oller and M. Paeth determined that Claimant had severe osteoarthritis, obesity, and hypertension, and non-severe chronic pulmonary insufficiency, anxiety and compulsive disorders and attention deficit disorder. (Rec. Doc. 8-1, pp. 84-121). Initially and on reconsideration, the consultants found that Claimant's statements about the intensity, persistence, and functionally limiting effects of the symptoms were only partially consistent with the Claimant's statements and not supported by the file evidence. (Rec. Doc. 8-1, pp. 87, 96, 109, 117). They further found that Claimant's physical limitations allowed

her to do sedentary work, that her mental issues did not impact her ability to work, and that she was not disabled. (Rec. Doc. 8-1, pp. 84-121).

### III. Testimony at telephone hearing before the ALJ

Claimant testified that she has a driver's license but is not able to drive due to her ankle problems and that she takes medication for blood pressure, anxiety, reflux, and pain which makes her drowsy. (Rec. Doc. 8-1, pp. 76-77). She stated that she has a plate and screw in her left ankle, and torn ligaments and arthritis in her right ankle causing constant pain and swelling and preventing her from being able to stand and sit for long periods. *Id.* She also testified that she suffers from depression, anxiety, and crying spells, and that she needs help dressing, bathing, doing laundry, and washing dishes. (Rec. Doc. 8-1, pp. 78-79). She also testified that she last worked as a CNA in a nursing home, but after she fell with a patient she resigned because her doctor told her she could no longer perform that work. *Id.*

The ALJ found Claimant was not disabled. Claimant now seeks reversal of the Commissioner's adverse ruling.

## Discussion

### A. Standard of Review

This court's standard of review is (1) whether the final decision is supported by substantial evidence, and (2) whether the Commissioner applied the proper legal standards to evaluate the evidence. *Keel v. Saul*, 986 F.3d 551, 555 (5th Cir. 2021) (citation omitted). The Supreme Court has emphasized that:

> [t]he phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. Under the substantial-evidence standard, a court looks to

> an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is "more than a mere scintilla." It means— and means only— "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

*Biestek v. Berryhill*, 139 S. Ct. 1148, 1154, (2019) (internal citations omitted). The reviewing court may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). Despite this court's limited function, it must scrutinize the record in its entirety to determine the reasonableness of the decision reached and whether substantial evidence supports it. *Joubert v. Astrue*, 287 F. App'x 380, 382 (5th Cir. 2008) (citing *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005)).

The Supreme Court defines substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, (1971) (quoting *Consolidated Edison Co. v. N.L.R.B.,* 305 U.S. 197, 229, (1938)). Substantial evidence is "more than a scintilla and less than a preponderance." *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993). The evidence must create more than "a suspicion of the existence of the fact to be established, but no 'substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983).

Upon finding substantial evidence, the court may only review whether the Commissioner has applied proper legal standards and conducted the proceedings

consistently with the statute and regulations. *Carter v. Heckler*, 712 F.2d 137, 140 (5th Cir. 1983). In other words, where the Commissioner's decision is supported by substantial evidence, the findings therein are conclusive and must be affirmed unless the Commissioner applied an incorrect legal standard that materially influenced the decision. *See* 42 U.S.C. § 405; *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000); *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001).

Four elements of proof are weighed in determining if substantial evidence supports the Commissioner's determination: (1) objective medical facts, (2) diagnoses and opinions of treating and examining physicians, (3) the claimant's subjective evidence of pain and disability, and (4) the claimant's age, education, and work experience. *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991).

### B. **Entitlement to Benefits**

The Disability Insurance Benefit program provides income to individuals who are forced into involuntary, premature retirement, provided they are both insured and disabled, regardless of indigence. *See* 42 U.S.C. § 423(a). *See also Smith v. Berryhill*, 139 S. Ct. 1865, 1772 (2019). Supplemental Security Income provides income to individuals who meet certain income and resource requirements, have applied for benefits, and are disabled. 42 U.S.C. § 1382(a)(1) & (2). *See also Smith v. Berryhill*, 139 S. Ct. at 1772. A person is disabled "if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §

1382c(a)(3)(A). A claimant is disabled if his physical or mental impairment or impairments are so severe that he is unable do his previous work and, considering his age, education, and work experience, cannot participate in any other kind of substantial gainful work that exists in significant numbers in the national economy, regardless of whether such work exists in the area in which the claimant lives, whether a specific job vacancy exists, or whether the claimant would be hired if he applied for work. 42 U.S.C. § 1382c(a)(3)(B).

### C.  Evaluation Process

#### 1. Burden of Proof

A claimant is "disabled" as defined in the Social Security Act if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A sequential five-step inquiry is used to determine whether a claimant is disabled. The Commissioner must determine whether the claimant (1) is currently working; (2) has a severe impairment; (3) has an impairment listed in or medically equivalent to those in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) is able to do the kind of work he did in the past; and (5) can perform any other work. 20 C.F.R. § 404.1520.

Before going from step three to step four, the Commissioner evaluates the claimant's residual functional capacity by determining the most the claimant can still do despite his physical and mental limitations based on all relevant evidence in the

record. 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 404.1545(a)(1). The claimant's residual functional capacity is used at the fourth step to determine if he can still do his past relevant work and at the fifth step to determine whether he can adjust to any other type of work. 20 C.F.R. § 404.1520I.

"The claimant bears the burden of proof on the first four steps, but the Commissioner bears the burden on the fifth step." *Salmond v. Berryhill*, 892 F.3d 812, 817 (5th Cir. 2018). This burden may be satisfied by reference to the Medical-Vocational Guidelines of the regulations, by expert vocational testimony, or by other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987). If the Commissioner makes the necessary showing at step five, the burden shifts back to the claimant to rebut this finding. *Perez v. Barnhart*, 415 F.3d at 461; *Fraga v. Bowen*, 810 F.2d at 1302. If the Commissioner determines that the claimant is disabled or not disabled at any step, the analysis ends. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994), *cert. den.*, 914 U.S. 1120 (1995) (quoting *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987)).

### 2. Residual Functional Capacity

The ALJ is responsible for determining a claimant's residual functional capacity. *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995). A residual functional capacity assessment "is a determination of the most the claimant can still do despite his physical and mental limitations and is based on all relevant evidence in the claimant's record." *Perez v. Barnhart*, 415 F.3d at 462 (citing 20 C.F.R. § 404.1545(a)(1)). In making a residual functional capacity assessment, an ALJ must

consider all symptoms and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. The ALJ must consider the limitations and restrictions imposed by all of an individual's impairments, even those that are not severe. *Giles v. Astrue*, 433 F. App'x 241, 245 (5th Cir. 2011) (citing 20 C.F.R. § 404.1545). The evaluation of a claimant's subjective symptoms is a task particularly within the province of the ALJ who has had an opportunity to observe whether the person seems to be disabled. *Chambliss v. Massanari,* 269 F.3d 520, 522 (5th Cir. 2001); *Loya v. Heckler*, 707 F.2d 211, 215 (5th Cir. 1983).

### D. The ALJ's Findings and Conclusions

The ALJ made the following findings:

- At step one, that Claimant has not engaged in substantial gainful activity from her alleged onset date of March 12, 2018. (Rec. Doc. 8-1, p. 17). This is supported by substantial evidence in the record.

- At step two, that Claimant had the following medically determinable impairments: left ankle reconstruction; right ankle degenerative joint disease; anxiety; and depression (20 CFR 404.1520(c) and 416.920(c)). (Rec. Doc. 8-1, p. 17). This is supported by substantial evidence in the record.

- At step three, the ALJ found that Claimant has no impairment or combination of impairments that meets or medically equals the severity of a listed impairment. (Rec. Doc. 8-1, p. 18). Claimant does not

challenge this finding.

- The ALJ found that Claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except that Claimant is limited to work with simple, routine, and repetitive tasks with 1-2-3 step instructions in a work environment free of any fast-paced production requirements with few, if any, workplace changes. Claimant does not challenge this finding.

- At step four, the ALJ found that claimant is unable to perform past relevant work. (Rec. Doc. 8-1, p. 21). Claimant does not challenge this finding.

- At step five, the ALJ found that Claimant was not disabled from March 12, 2018, through the date of the decision because there are jobs in the national economy that she can perform. Claimant challenges this finding.

### E. **Claimant's Allegation of Error**

Whether the ALJ failed to find Claimant disabled.

### Analysis

Claimant does not assert specific allegations of error but generally asserts that the ALJ's statement that "[a]fter careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; ... plus the rest of the decision should be enough to support a finding of disabled." (Rec. Doc. 9 ¶¶ 6, 7).

In response, the Commissioner asserts that the ALJ's decision that Claimant was not disabled within the meaning of the Social Security Act is supported by substantial evidence and should be affirmed. The Commissioner further asserts that Claimant's response is misleading because it extracts a fraction of the ALJ's finding which states in full:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

(Rec. Doc. 8-1, p. 20).

Claimant then submitted a one paragraph reply stating:

> An overall consideration of the entire record shows that there is no clear and convincing evidence for the Administrative Law Judge's decision to deny claimant's disability claim; therefore, the denial should be overruled.

(Rec. Doc. 11 ¶ 1).

The Court agrees that Claimant relied on an extracted portion of the ALJ's statement to support the argument that the ALJ erred in finding her not disabled. As expressed above, the statement in its entirety explains that although Claimant's impairments could reasonably be expected to cause the alleged symptoms suffered, her statements regarding the intensity, persistence and limiting effects of these symptoms are inconsistent with the evidence. Claimant then relies on a generalized statement that the rest of the ALJ's decision supports the argument that the ALJ erred. Claimant did not specifically allege any errors that the ALJ made or point to

any medical evidence, testimony, or other evidence in the record in support of her argument. Since Claimant failed to adequately point out allegations of error and/or brief them, she has waived any error. *Boggs v. Krum Indep. Sch. Dist.*, 376 F. Supp. 3d 714, 722 (E.D. Tex. 2019) ("A party waives an issue if he fails to adequately brief it.") (quotations omitted). It is not the court's responsibility to scour the record looking for evidence to support a party's arguments. *See Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003) (citing *U.S. v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs."))." *Perrodin v. Comm'r of Soc. Sec. Admin.*, 2022 WL 1207403, at *4 n. 46 (W.D. La. 2022), *Courtney B. v. Kijakazi*, 2021 WL 4243512, at *8 n. 12 (S.D. Tex., 2021). Accordingly, the Court finds Claimant's argument lacks merit.

In addition, Claimant argues in her reply brief that there is "no clear and convincing evidence for the Administrative Law Judge's decision to deny claimant's disability claim." (Rec. Doc. 11 ¶ 1). While the Court need not consider this argument as it was raised for the first time in reply,[3] it is important to note that this court's standard of review is (1) whether the final decision is supported by substantial evidence, and (2) whether the Commissioner applied the proper legal standards to evaluate the evidence. *Keel v. Saul*, 986 F.3d 551, 555 (5th Cir. 2021) (citation omitted). As the Supreme Court has emphasized, "Under the substantial-evidence

---

[3] *See Flores v. AT&T Corp.*, No. EP-17-CV-00318-DB, 2018 WL 6588586, at *9 (W.D. Tex. Nov. 8, 2018) ("The Reply is not the appropriate place for a party to raise new issues for the first time."); *Bruce v. McCain*, No. CV-15-3814, 2017 WL 1161136, at *2 (E.D. La. Mar. 29, 2017) ("This Court will not consider issues when they are raised for the first time in a reply brief.").

standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations. . . . It means—and means only— 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

In assessing the nature, severity, and functional effects of Claimant's impairments, the ALJ found:

> As for the claimant's statements about the intensity, persistence, and limiting effects of his or her symptoms, they are inconsistent because the objective evidence of record does not support the degree of limitation alleged by claimant. While the undersigned is not suggesting that claimant does not have any limitations, the objective evidence does not support disability. The limitations supported by the evidence are incorporated into the RFC set forth herein.

(Rec. Doc. 8-1, p. 20).

The ALJ acknowledged Claimant's history of treatment for bilateral pain in her feet and ankles, as well as weakness in her ankles, hypertension, anxiety, and depression. (Rec. Doc. 8-1, p. 18).

He further noted:

> The undersigned has considered all of the impairments listed in Appendix 1, specifically 1.17, 12.04 and 12.06, and finds that claimant's impairments do not meet or equal any listed impairment for the period she alleged she was disabled.

*Id.*

The ALJ recognized that Claimant had mental limitations (1) in understanding, remembering, or applying information; (2) in interacting with others;

and (3) in adapting or managing oneself which he found "mild;" and (4) with concentrating, persisting or maintaining pace which he found "moderate," but found:

> The severity of the claimant's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.04 and 12.06. In making this finding, the undersigned has considered whether the "paragraph B" criteria are satisfied.

*Id.* Accordingly, the ALJ found Claimant not disabled.

This Court has scrutinized the record in its entirety to determine the reasonableness of the decision reached and whether substantial evidence supports it and finds that substantial evidence supports the ALJ's finding that Claimant was not disabled from March 12, 2018, through the date of the decision.

## **Conclusion and Recommendation**

Because the ALJ's finding that Claimant was not disabled from March 12, 2018, through the date of the decision is supported by substantial evidence, this Court recommends that the Commissioner's decision be AFFIRMED and this matter should be dismissed.

\* \* \* \* \*

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from receipt of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen days after receipt of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within

fourteen days following the date of receipt, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (en banc), superseded by statute on other grounds, 28 U.S.C. § 636(b)(1).

Signed at Lafayette, Louisiana on this 12th day of August, 2024.

DAVID J. AYO
UNITED STATES MAGISTRATE JUDGE